[L. A. No. 9288. In Bank.—March 15, 1929.]

M. MARIE TOMBLIN, Appellant, v. FRANK C. HILL et al., Respondents.

Otto A. Gerth, Hugh L. Dickson, Duke Stone, O'Melveny, Tuller & Myers and Albert Parker for Appellant.

Hewitt, McCormick & Crump and Hewitt, Ford & Crump for Respondents.

PRESTON, J.—Plaintiff in this action sued defendants Frank C. Hill and Comelia Beauvais, seeking to have them declared trustees for her benefit of the legal title to a certain piece of real property situate in the city of Los Angeles. She alleged the relation of attorney and client between defendant Hill and herself respecting said property; also that with the intent of securing the title to said property for himself, he, through the agency of others, purchased a sheriff's certificate theretofore issued at the execution sale of said property had upon a judgment against plaintiff and in favor of one Olive Pearl Phillips, defendant Hill being attorney for plaintiff in the legal proceedings leading to said judgment. She further alleged that with intent to defraud her and to acquire said property for himself, said defendant purchased various other judgments theretofore rendered against her, which were a lien against said property purchased; also a $12,000 mortgage held against said property by the Security Trust and Savings Bank.

Defendants answered with a general denial, alleging that neither they nor either of them held said property in trust for plaintiff nor had they acted in fraud of her rights therein. And while admitting the relationship of attorney and client between defendant Hill and said plaintiff, they at the same time alleged that all acts done and performed by said Hill in connection with said subject matter were done with the full knowledge and consent of plaintiff. As a separate defense they pleaded that on or about October 8, 1923, plaintiff had full knowledge of all that was done by defendant Hill respecting said transactions and was fully cognizant at that time that unless she redeemed the property within the time provided by law, to wit, by January 2, 1924, her right thereto would be lost and the title would vest in said defendant Hill, and further pleaded laches and estoppel on the part of said plaintiff in that from the eighth day of October, 1923, and throughout the year 1924, she had dealt with said defendant Hill as one about to acquire ownership of said property and that she was guilty of laches in not asserting her title to said property prior to expiration of the period for redemption and in dealing with him subsequent to said time and until May 11, 1925, as the owner thereof. The answer also set up the defense that plaintiff was not the real party in interest in that her equity of redemption had passed to still another judgment creditor by the name of Collins, who, under judgment against her for the sum of $25,000, had also caused said property to be exposed to execution sale and had purchased thereat and secured a sheriff's deed thereunder.

The court sustained the contentions of defendants upon all grounds and found said special defenses to be true. Plaintiff has appealed. There is little, if any, dispute as to the facts. It is clear that the truth of the transaction was substantially as follows:

The property in question was of the value of about $50,000 or $55,000. The financial affairs of plaintiff were in such a condition that some five or six judgments were in existence against her, the total amount thereof aggregating, if not exceeding, the value of said property. She was practically in a hopeless condition as to her ability to redeem the property. She was indebted to defendant Hill

in a considerable amount for his services as her attorney, having paid nothing to him on account of various valuable services rendered to her. Said execution sale took place on January 2, 1923. Early in the month of March, 1923, plaintiff departed for the east with the avowed intention of securing the necessary funds to redeem said property and to pay said obligations. Prior to said execution sale, however, defendant Hill had advised her to have some person purchase said property at the sale. This she did not do. On or about April 27, 1923, judgment creditor Phillips, who had purchased at said sheriff's sale, assigned her right, title and interest in said property under the sheriff's certificate, to the Union Bank and Trust Company, which was acting in the matter for defendant Hill and said bank later assigned said certificate of sale to defendant Beauvais, to whom the sheriff's deed was made. But admittedly all these parties were acting for defendant Hill. The exact motive of defendant Hill is not clear. Perhaps he was acting because of the claim of said Phillips that he had agreed to see that she would not lose anything by making the loan to plaintiff and to save himself from a complete loss of his claim for compensation in the event plaintiff was unable to extricate herself from her financial entanglements. He paid to Mrs. Phillips full value for the assignment of the certificate. In May, 1923, said Security Trust and Savings Bank assigned its mortgage to the agent of said Hill and said Hill also purchased two or three other smaller judgments against plaintiff which were liens upon said real property.

But the court found, and it is undoubtedly a fact, that defendant Hill was acting without intending to prejudice the rights of plaintiff respecting said property. This is manifestly true for on or about October 8, 1923, on which date plaintiff was still in the east, he informed her in detail of what he had done in the premises and why he had so done and solicited her consent to his acquiring the property for himself in the event she was unable to effect redemption thereof. During the remaining period for redemption he repeatedly warned her that unless redemption of the property was made before January 2, 1924, she would lose all her rights therein, and she admittedly knew that in case of such loss, said Hill would succeed to the

title to said property. Being unsuccessful in the east in her efforts to secure any funds whatsoever with which to redeem said property, plaintiff returned to Los Angeles on or about December 10, 1923, and had interviews with defendant Hill between that date and January 2, 1924. She called upon her brother-in-law and a friend to attend the office of said Hill with her. The matter was there thoroughly gone into and again she understood that if she did not make redemption before January 2, 1924, title to said property would vest in defendant Hill. She was unable to redeem, but defendant Hill, still willing to aid her, continued to offer her the right to acquire the said property and on or about February 15, 1924, agreed to waive all claims for attorney fees and agreed to have all claims and demands of defendant Beauvais therein waived if plaintiff could effect a transfer of the property so as to get something for herself out of the transaction. Plaintiff accordingly secured a proposed purchaser, Pomona College, which was willing to pay $52,500 for the property. But by this time plaintiff's indebtedness had grown to exceed the sum of $63,000. Seeing, therefore, that nothing could result to her financially out of such a sale, it was abandoned about the month of May, 1924. Plaintiff thereafter made no claim whatsoever to said real property or any interest therein until the institution of this suit on the date aforesaid, May 11, 1925. At no time during the pendency of said negotiations did plaintiff ever offer to pay defendant Hill any amount as attorney fees nor did she during said time or at any other time offer to pay or reimburse him for any sums advanced in connection with the matter. Nor does the evidence show that she was ever able at any time to pay all or any part of said advancements. She rests her legal claim solely upon the contention that a constructive trust arose in her favor by reason of the fact that defendant Hill was her attorney in the legal proceedings which were the basis for the judgment in favor of said Phillips against her and the execution sale thereon and purchase of the sheriff's certificate by him thereunder.

We see no occasion to disturb the time-honored holding of courts everywhere that the relation of attorney and client is one of special confidence and trust and that the dignity and integrity of the legal profession demands at

all times the protection of "the interests of a dependent and confiding clientage." As was said by the court of appeals of Missouri in speaking of this principle in the case of *Addison* v. *Cope*, 210 Mo. App. 569, 578 [243 S. W. 212, 215]: "It is better to remain on safe and secure professional ground, to the end that the ancient and honored profession of the law and its representatives may not be brought into disrepute. Courts have consistently held the members of the profession to the strictest account in matters affecting the relation of attorney and client."

■ However, in this case the sin of the defendant Hill was at most technical. It consisted solely in acting without the express consent of the client, but it was not done to transgress any right of hers. The claims were not purchased at a discount. There was nothing in the transaction that would impeach his loyalty to her in any pending or future employment or cloud or bias his judgment with respect to her interest. He fully disclosed to her everything he had done. Nevertheless, the rule of law above referred to, though sometimes harsh in its operation, was meant for the good of the attorney and the profession. It will not stop to weigh the situation to see whether or not detriment has been suffered by the client, but will without hesitation grant unto the client the full rights to take advantage of a purchase so made by the attorney even though the attorney be acting in the utmost good faith.

■ "The law does not stop to inquire into the fairness of the sale or the adequacy of price, but stamps its disapproval upon a transaction which creates a conflict between the self-interest and integrity of the trustee. The rule embraces not only direct purchases, but also indirect purchases through third persons, and applies regardless of whether the sale is private or under decree, or whether the *cestui que trust* is an infant or an adult. . . . " (39 Cyc., p. 366.) "It is a general principle that a trustee will not be allowed to acquire an interest adverse to the trust, and that when he does purchase in his own name an outstanding title, incumbrance, or claim against the estate of his *cestui que trust*, or any other interest in the trust property, such claim will be held to inure to the benefit of the *cestui que trust*." (39 Cyc., p. 298.)

In other words, plaintiff, had she acted promptly, had the undoubted right to take advantage of the purchase made by defendant Hill, subject only to the burden of reimbursing him for his outlay and a reasonable amount for his services. This holding is implied in *Fisher* v. *McInerney*, 137 Cal. 28 [92 Am. St. Rep. 68, 69 Pac. 622, 907]; *Wickersham* v. *Crittenden*, 93 Cal. 17, 29 [28 Pac. 788]; see, also, *Cavagnaro* v. *Don*, 63 Cal. 227, and *Page* v. *Neglee*, 6 Cal. 241.

However, this proposition does not dispose of the cause, but it is lost in the consideration of the matter next herein set forth. The court found that on or about the eighth day of October, 1923, plaintiff had full knowledge of the purchases made by defendant Hill and of his purpose in so making them, that she likewise from that day and during the remaining period of redemption knew that the same would expire on January 2, 1924, and that if she did not redeem during said time her right would be lost; that she also knew that the defendant Hill had to a certain extent been acting in his own right in the matter and that unless she did so redeem all rights to said certificate of purchase would inure to him and said sheriff's sale would vest title to said property in him or his agents. The court further found that by her acts and conduct plaintiff acquiesced in the purchase of said sheriff's certificate and note and mortgage by said Hill as his own property and for his own benefit and ratified the same.

There is no escape from the conclusion that these findings of fact are supported by the evidence nor is there any question that on sound legal principles this defense must be sustained. The motives actuating plaintiff do not clearly appear, but it is certain that a rise in value of the property or some other special circumstances caused the institution of this action for when the transaction with the Pomona College failed, plaintiff doubtless at that time abandoned all hope of acquiring anything for herself out of said property.

"A client's right to claim the benefit of any purchase by his attorney must be exercised within a reasonable time; it is impliedly waived unless so exercised, particularly where there has been no moral turpitude in the conduct of the attorney, or where a delay in the assertion of

the client's rights will affect the position of the parties to the transaction, or the value of the property.'' (6 Cor. Jur., p. 685.)

" . . . While statutes of limitation are not controlling in this respect, nevertheless, the client's right to claim the benefit of a purchase made by his attorney must be exercised within a reasonable time; laches being recognized as an available defense where such claims are asserted. A client must notify his attorney promptly of his election to claim the benefit of the purchase especially where delay will affect the position of the parties or the value of the property. The client cannot, however, be charged with laches until he has, or should have had, knowledge of the facts.'' (1 Thornton on Attorneys at Law, sec. 173, pp. 302, 307. See, also, 2 R. C. L., p. 970, sec. 46, p. 973, sec. 50; *Marsh* v. *Whitmore,* 21 Wall. (U. S.) 88, 178 [22 L. Ed. 482, see, also, Rose's U. S. Notes]; *McLean* v. *Maloy,* 136 Md. 467 [111 Atl. 91]; *Olson* v. *Lamb,* 56 Neb. 104 [71 Am. St. Rep. 670, 76 N. W. 433].)

Finding nothing to impeach the finding of good faith on the part of defendant Hill, we hold that plaintiff is estopped by her delay and by her acts and conduct to question at this time the title to said property in this proceeding. These views make it unnecessary to consider the point that plaintiff is not the real party in interest because of the execution sale of her equity of redemption and the purchase thereof by one Collins and the vesting of title thereunder in him.

Judgment affirmed.

Shenk, J., Richards, J., Seawell, J., Langdon, J., Curtis, J., and Waste, C. J., concurred.

Rehearing denied.

All the Justices concurred.