[No. F002449. Fifth Dist. Dec. 14, 1983.]

DARLEEN WOODS, Petitioner, v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent;
GORDON THOMAS WOODS, SR., Real Party in Interest.

**COUNSEL**

Hurlbutt, Clevenger, Long & Vortmann, Howard R. Broadman, Stephen Adams, De Goff & Sherman and Richard Sherman for Petitioner.

No appearance for Respondent.

Arthur C. Kralowec and Noel S. Simon for Real Party in Interest.

**OPINION**

**ZENOVICH, Acting P. J.**—In this petition for writ of mandate, wife seeks an order disqualifying husband's counsel of record from participating in the dissolution proceedings between husband and wife.

The principal issue before us is whether an attorney, who for years has represented the interests of a family corporation, can represent one spouse against the other in an action for dissolution of their marriage when the family corporation is a primary focus of dispute in the dissolution.[1]

---

[1]Wife has moved to join the corporation, E P & T Industries, Inc., as a party to the dissolution action. The court denied husband's demurrer to the complaint for joinder. An answer was then filed signed by Mr. Kralowec as attorney for husband *and* claimant corporation. As of this date, we are not aware that the court below has formally ruled on the joinder issue.

In March 1983, wife filed an action for dissolution of her marriage and retained Howard R. Broadman as her trial counsel. Shortly thereafter, wife filed a motion seeking to disqualify husband's counsel, Arthur C. Kralowec, and all of his associates and employees from representing or assisting husband in the dissolution action. The motion was heard on the declarations submitted by each of the parties. No testimony was taken by the court.

Wife alleged in her declarations, among other things, that Mr. Kralowec was the family's business attorney and had been so for many years. Husband admitted that Mr. Kralowec had represented the family corporation since approximately 1975. Husband acknowledged that Mr. Kralowec had represented him in approximately 10 to 12 matters arising from corporate activities and otherwise. Mr. Kralowec admitted that over the years he developed a strong loyalty to husband. Wife further alleged that she had several conversations with Mr. Kralowec in which she had revealed to him her opinion and feelings on matters which might have relevance to the dissolution action. She told him her opinion as to the fair market value of the property on which the family home is situated and her personal feelings about maintaining it as her home on a permanent basis. She discussed with Mr. Kralowec her opinion concerning the economic liability of the business and her feelings regarding its continuation in relation to another lawsuit. She also discussed with him the merits and the probabilities of the corporation winning or losing several of the cases. One of these was a trade secret lawsuit by the corporation against an ex-employee. The other involved an easement where wife was a named defendant. Mr. Kralowec also wrote wife's will. Husband and Mr. Kralowec characterized the dealings between wife and Mr. Kralowec as not involving the sharing of confidential information.[2]

Mr. Kralowec and wife differed as to the content of their conversations regarding the impending divorce. Wife stated Mr. Kralowec advised her that he felt he had a conflict of interest in representing her in a divorce and indicated he would represent both husband and wife if the case could be settled on an amicable basis. Kralowec denied that wife ever asked him to act in her behalf during the dissolution proceedings. Wife alleged that after she learned her husband was having an extramarital affair, she met with Mr. Kralowec in his office with no one else present and exposed some of her most inner feelings regarding her personal relationship with her husband. Mr. Kralowec flatly denied that this conversation took place. Both husband and Kralowec denied that wife ever discussed the alleged extra-

---

[2]Husband declared that wife had no basic knowledge of the financial aspects of the corporate business and that she was a "mere functionary." Mr. Kralowec characterized wife as a "go-fer" who made no decisions and provided no thinking, information or ideas.

marital sexual relationships that her husband was having. Both asserted that wife must have confused Kralowec with some other lawyer. Mr. Kralowec declared that he would not have represented wife in the dissolution action even if she had asked him to do so because he had ". . . been the attorney for [husband] since approximately 1975 and [was] completely loyal to him."

On May 5, 1983, the trial court denied the motion to disqualify Mr. Kralowec on the ground that nothing was contained in wife's declarations to demonstrate that he ever acquired any "knowledge or information which would be injurious" to wife.

## DISCUSSION

The Rules of Professional Conduct to guide attorneys in their relationship with clients and former clients are "well established and generally understood by all attorneys in this state." (*People* ex rel. *Deukmejian* v. *Brown* (1981) 29 Cal.3d 150, 155 [172 Cal.Rptr. 478, 624 P.2d 1206].) Rule 4-101 of the Rules of Professional Conduct of the State Bar of California provides as follows: "A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client."[3] The ethical prohibition against acceptance of adverse employment involving prior confidential information includes potential as well as actual use of such previously acquired information. (*Yorn* v. *Superior Court* (1979) 90 Cal.App.3d 669, 675 [153 Cal.Rptr. 295]; *Galbraith* v. *The State Bar* (1933) 218 Cal. 329, 332-333 [23 P.2d 291].)

■ The trial court below, apparently concentrating on wife's role as a *former* client of Mr. Kralowec (through drafting wife's will, for example), seemed to rule there must be an "actual" showing that confidential information was obtained to rule in wife's favor on the disqualification motion. However, the test does not require the "former" client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect. It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification. (*Trone* v. *Smith* (9th Cir. 1980) 621 F.2d 994, 998-999; see also *Global Van Lines, Inc.* v. *Superior Court* (1983) 144 Cal.App.3d 483, 487-489 [192 Cal.Rptr. 609].)

---

[3]Rule 5-102 requires that before an attorney may represent interests adverse to a client, he must obtain his client's consent in writing.

We believe the proper focus should be on the fact that in representing an ongoing family corporation, Mr. Kralowec in a very real sense *continues* to represent wife.

Wife contends there are serious problems when the attorney of an ongoing corporation owned by wife and husband also undertakes to act as counsel for husband or wife in a divorce action. Wife contends that a corporate attorney owes undivided loyalty to the corporation and cannot take sides in a serious dispute between its owners. Wife further asserts that the problem is amplified here in that she has moved to join the family corporation as a party to the dissolution proceedings. We believe there is merit to wife's contentions.

Wife relies on *Jeffry* v. *Pounds* (1977) 67 Cal.App.3d. 6, 11-12 [136 Cal.Rptr. 373].) In *Jeffry,* a law firm that had been discharged by a client in a personal injury action, after the client had discovered that the firm had undertaken to represent the client's wife in a dissolution of marriage action, brought an action against the client and his new attorney for recovery of attorney fees. The trial court concluded that plaintiff did not violate a professional canon by taking on the wife's dissolution suit against their personal injury client, and that no confidential information was compromised, and allowed plaintiff the reasonable value of the legal services payable out of the fee received by the new attorney. The Court of Appeal reversed and remanded. The court held that plaintiff breached the rule prohibiting an attorney from representing conflicting interests except with the written consent of all parties concerned by undertaking to represent the client's wife in the dissolution action without the written consent of both parties. The Court of Appeal held that the trial court's analysis had been "too narrow." (*Id.,* at p. 9.) The court analyzed the situation in terms of the strictures against dual representation of antagonistic interests. "The strictures against dual representation of antagonistic interests are far broader; they arise without potential breaches of confidentiality." (*Id.,* at pp. 9-10.) The court noted the professional responsibility rule seeks the objective of public confidence, as well as internal integrity. The court pointed out that a lay client is likely to doubt the loyalty of a lawyer who undertakes to oppose him even in an unrelated matter. (*Id.,* at pp. 10-11.)

Husband contends that *Jeffry* v. *Pounds, supra,* 67 Cal.App.3d 6, is inapplicable to the factual situation presented in the instant case. The factual situation in *Jeffry* involved the law firm undertaking to represent a wife in a marital dissolution action at the same time that it was currently representing the husband in a personal injury action. Husband contends Mr. Kralowec in the instant case does *not* currently represent wife in any matter. Moreover, husband contends that an attorney acting for a corporation rep-

resents *it,* its stockholders and its officers in their representative capacity and does not represent the officers personally. (*Meehan* v. *Hopps* (1956) 144 Cal.App.2d 284 [301 P.2d 10].)[4] Husband argues that Mr. Kralowec never really represented either spouse and therefore is not acting adverse to a client or former client by now representing husband against wife. Not so under the circumstances before us. We believe Mr. Kralowec necessarily represents *both* husband's and wife's interests in his role as attorney for the family corporation. ▆ A corporation's legal adviser must refrain from taking part in controversies among shareholders as to its control, and when his opinion is sought he must give it without bias or prejudice. (*Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614, 622 [120 Cal.Rptr. 253].)

▆ We believe the fact that Mr. Kralowec continues to represent wife's interest in a family business which will be the focus of the marital dissolution is sufficient to disqualify Mr. Kralowec from representing husband. Under such circumstances Mr. Kralowec should be disqualified even in the absence of a showing that he has in fact obtained confidential information. It has long been recognized that where ethical considerations are concerned, disqualification should be ordered not only where it is *clear* that the attorney *will* be adverse to his former client but also where it *appears* that he *might.* (See *Galbraith* v. *The State Bar, supra,* 218 Cal. 329, 332-333.) Moreover, the purpose of the rules against representing conflicting interests is not only to prevent dishonest conduct, but also to avoid placing the honest practitioner in a position where he may be required to choose between conflicting duties or attempt to reconcile conflicting interests. (*Yorn* v. *Superior Court, supra,* 90 Cal.App.3d 669, 675; *Earl Scheib, Inc.* v. *Superior Court* (1967) 253 Cal.App.2d 703, 706 [61 Cal.Rptr. 386].) Disqualification is proper here to avoid any appearance of impropriety. (*Comden* v. *Superior Court* (1978) 20 Cal.3d 906, 915 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R. 4th 562].)[5]

Mr. Kralowec is not a neutral lawyer who had not been consulted by either side prior to the dissolution action. The appearance of impropriety here compels a strong rule prohibiting such an attorney from representing either side. This, we believe, is consistent with the underlying purposes of the rules against representing conflicting interests. As the court stated in

---

[4]The *Meehan* case is of little use to husband as *Meehan* involved a controversy between a corporation and one of its officers and the instant case involves a dispute between the owners of the corporation.

[5]We note there is a real possibility that Mr. Kralowec may have to be called as a witness in regard to the dispute over the assets and the handling of the corporation. Mr. Kralowec should not be placed in a situation where he may be forced to testify against the interests of wife. He has already affirmed his loyalty to husband. (See *Comden* v. *Superior Court, supra,* 20 Cal.3d 906.)

*Goldstein* v. *Lees, supra,* 46 Cal.App.3d 614, 620, quoting from *Tomblin* v. *Hill* (1929) 206 Cal. 689, 694 [275 P. 941]:

" ' "It is better to remain on safe and secure professional ground, to the end that the ancient and honored profession of the law and its representatives may not be brought into disrepute. Courts have consistently held the members of the profession to the strictest account in matters affecting the relation of attorney and client." ' "

We conclude that, absent consent or waiver, the attorney of a family-owned business, corporate or otherwise, should not represent one owner against the other in a dissolution action. Mr. Kralowec acted properly when he told wife he could not represent her. He should have said the same thing to husband to avoid any appearance of impropriety.

Let a peremptory writ of mandate issue directing the trial court to vacate its order of May 5, 1983, denying wife's motion to disqualify husband's attorney. The trial court is hereby directed to grant the disqualification motion.

Woolpert, J., and Hamlin, J., concurred.